**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **RANJANA AGARWAL, As Executor of the Estate of ARUN AGARWAL a/k/a ARUN KUMAR AGARWAL, Deceased**,<br>6 Pond Drive<br>Syosset, NY 11791<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**CENTRAL ISLAND HEALTHCARE**<br>825 Old Country Road<br>Plainview, New York 10083<br><br>    **Defendant.** | **Index No. 600698/2022<br>Removed from:**<br><br>**Supreme Court Nassau County State of New York** |

## NOTICE OF REMOVAL

    Defendant, Central Island Healthcare ("Central Island" or "Defendant"), by and through its undersigned attorneys, pursuant to the "*exclusive federal cause of action*" exception for "*willful misconduct*" under the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d-6d, 247d-6e and the Declaration under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198-01 (March 17, 2020) ("COVID-19 Declaration"), 28 U.S.C. §§ 1331, 1367, 1441, 1442(a)(1) and 1446, hereby removes this action from the Supreme Court of the State of New York, Nassau County, Index No. 600698/2022. Defendant reserves all defenses and objections to venue.

    In support of this Notice of Removal, Defendant states:

## I.  STATEMENT OF THE CASE

    1.  Plaintiff filed the Summons and Verified Complaint (attached hereto as **Exhibit A**)

and captioned *Ranjana Agarwal, as Executor of the Estate of Arun Agarwal aka Arun Kumar Agarwal, Deceased v. Central Island Health Care Center,* Index No. 600698/2022, in the Supreme Court of the State of New York, Nassau County, on January 18, 2022.

2.    Pursuant to 28 U.S.C. § 1446(a), a copy of the state court docket sheet, all process, pleadings, orders, and records served upon or filed by Defendant in the State Court Action are attached hereto.    Plaintiff's Summons and Complaint are attached as **Exhibit A;** the Affirmation/Affidavit of Service and the state court docket sheet are attached as composite **Exhibit B.**

3.    Plaintiff, Ranjana Agarwal, as Executor of the Estate of Arun Agarwal aka Arun Kumar Agarwal (deceased), alleges that Plaintiff-decedent was a resident at Central Island Healthcare "from on or around March 9, 2020 until March 22, 2020." **Exh. A** at ¶ 61.

4.    Plaintiff alleges, in part, in her **STATEMENT OF FACTS** in ¶ 32 of her Verified Complaint that:

> **Plaintiff also seeks recovery for punitive damages from the defendants [sic] based upon the forgoing cause of action and conduct that was grossly reckless, willful, <u>and</u> wanton in the face of the COVID-19 outbreak and pandemic.**

Plaintiff reasserts the allegations of ¶ 32 in each of her Causes of Action:  pursuant to New York Public Health Law 2801-D and 2803-C at ¶ 33, for Negligence at ¶ 78, for Conscious Pain and Suffering at ¶ 104, for Wrongful Death at ¶ 108, for Gross Negligence at ¶ 117, for Nursing Home Malpractice Resulting in Wrongful Death ¶ 125 and for Nursing Home Malpractice Resulting in Conscious Pain and Suffering  at ¶ 143.

## II.    THE PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN MET

5.    Defendant was served with the Complaint on February 2, 2022.

6.    Defendant's Notice of Removal was filed by March 4, 2022, and is timely under 28 U.S.C. § 1446(b) as this Notice has been filed within thirty (30) Days of the service of a copy of the initial pleading setting forth the claims for relief.

7.    All fees required by law in connection with this notice have been filed.

8.    This matter is removable to this Court as this Court has exclusive Federal Jurisdiction pursuant to 42 U.S.C. § 247d-6d(d)-(e) as the Verified Complaint (**Exh. A**) pleads "willful misconduct" as defined by the PREP Act and therefore falls into its sole exception, which places exclusive Federal Jurisdiction in the U.S. District Court for the District of Columbia.

9.    Written notice of the filing of this Notice of Removal will be given to Plaintiff.

10.    A copy of this Notice of Removal will be filed concurrently herewith in the Supreme Court, Nassau County, State of New York as required by 28 U.S.C. § 1446(b). No hearing has been set in the State Court Action as of the time of filing of this Notice of Removal.

11.    By filing this Notice of Removal, Defendant does not waive any right or defenses which may be available to Defendant.

## III.    EXCLUSIVE FEDERAL JURISDICTION - UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

12.    The PREP Act, at 42 U.S.C. § 247d-6d(d)-(e) provides a **<u>sole</u>** exception to the immunity of covered persons thereunder. (Emphasis added).  A covered person who meets this sole exception is subject to the exclusive jurisdiction of the U.S. District Court for the District of Columbia.

13.    The PREP Act at 42 U.S.C. § 247d-6d(d) states:

**Exception to immunity of covered persons**.  (Emphasis in original).

**(1)** In general. Subject to subsection (f), the sole exception to the immunity from suit and liability of covered persons set forth in subsection (a)

shall be for an exclusive Federal cause of action against a covered person

for death or serious physical injury proximately caused by *willful misconduct* . . . of such a covered person. (Emphasis added).

14. The PREP Act at 42 U.S.C. § 247d-6d(e)(1) states:

**(e) Procedures for suit.**  (Emphasis in original).

**(1)** *Exclusive Federal jurisdiction*. Any action under subsection (d) shall be filed and maintained only in the *United States District Court for the District of Columbia*.  (Emphasis added).

15. The PREP Act at 42 U.S.C. § 247d-6d(c)(1)(A)(i)-(iii) defines "willful misconduct" as follows.

The term "willful misconduct" shall, for purposes of subsection (d), denote an act or omission that is taken—
**(i)** intentionally to achieve a wrongful purpose;
**(ii)** knowingly without legal or factual justification; and
**(iii)** in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit.

16. Plaintiff has pled all three (3) elements of "willful misconduct."

1. As to the first element, Plaintiff pled Defendant acted "intentionally to achieve a wrongful purpose" in ¶¶ 53-54 of the Verified Complaint:

[D]efendant actively sought patients with similar medical needs as plaintiff-decedent . . . in order to fill their empty beds, increase their rate of occupancy and overall returns.  (Exh. A ¶ 53).

[P]laintiff-decedent was the type of resident whose care was paid for by the government and was the type of resident defendant actively sought in order to fill their empty beds and increase their rate of occupancy.  (Exh. A ¶ 54).

In summary, Plaintiff is claiming that Defendant intentionally engaged in wrongful misconduct by prioritizing profits over resident care.

2. As to the second element, Plaintiff pled Defendant acted "knowingly and without a legal justification" in ¶¶ 24 and 109-110 respectively in the

Verified Complaint:

> In or around January 2020, Defendants [sic] were *made aware* of severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) spreading world-wild and nationally, known colloquially as the coronavirus, that caused severe medical distress and death in individuals who caught the disease, especially, the elderly.

Despite Defendant's *awareness*, Plaintiff pled in ¶¶ 109-110 of the

Verified Complaint that:

> Defendants [sic] owed a duty to Arun Agarwal and the residents and/or patients . . . to keep them safe from . . . outbreaks of the virus.

And:

> Defendants [sic] breached their duty to Arun Agarwal, and failed to take the proper steps to protect their residents and/or patients at their Facility, including plaintiff-decedent, from the COVID-19 virus.

In summary Plaintiff alleges Defendant knew about the life-threatening

dangers of COVID-19, knew it had a legal duty to protect Arun Agarwal

from COVID-19, and yet still breached its legal duty to protect him.

3. As to the third element, Plaintiff pled Defendant acted "in disregard of

a known or obvious risk that is so great as to make it highly probable

that the harm will outweigh the benefit" in ¶¶ 119-120; 122 of the

Verified Complaint:

> (T)he defendant acted in so reckless a manner or failed to act in circumstances where an act was clearly required, so as to indicate disregard of the consequences of their actions or inactions. Exh. A, ¶ 119.

> (T)he defendant's conduct . . . was in reckless disregard." Exh. A, ¶ 120.

"(T)he defendant's conduct . . . was *willful and wanton*."  Exh. A, ¶ 121.  (Emphasis added).

17.    42 U.S.C. § 247d-6d(c)(1)(B) indicates that criterion for "willful misconduct" shall be construed as establishing a "standard for liability that is more stringent than a  standard of negligence in any form or recklessness."  Plaintiff, in her Verified Complaint, has pled Defendant acted with a more stringent standard of negligence that just any form or recklessness, Plaintiff has alleged Defendant's conduct was "in reckless disregard" ***and*** "*willful and wanton*" further establishing Defendant's exception to immunity and the exclusive Federal jurisdiction of the United States District Court for the District of Columbia.  Exh. A ¶¶ 120-121.

18.    The court in *Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393, 401 (3d Cir. 2021), recognizes that it is unambiguous:

> There is one except to this statutory immunity.  The PREP Act provides 'an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by 'willful misconduct.'

19.    In citing the PREP ACT, 42 U.S.C. § 247d-6d(d)(1), the Ninth U.S. District Court of Appeals, in *Saldana v. Glenhaven Healthcare LLC*, 2022 U.S. App. LEXIS 4631*14 agrees.

> [T]he sole exception to the immunity from suit and liability of covered persons . . . shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct . . . by such covered person.

20.    Defendant is well aware that defendants in other cases have attempted and failed at removal to Federal court, including failure to establish that Plaintiff pled "willful misconduct" that meets the definition under the PREP Act.  However, Defendant's basis for removal is distinguishable as the Plaintiff, in her Verified Complaint, has pled all three (3) required elements of "willful misconduct" and falls into the "exception to immunity of covered persons" under 42 U.S.C. § 247d-6d(d) and triggers the "exclusive jurisdiction" of the U.S.

District Court for the District of Columbia.  *See* 42 U.S.C. § 247d-6d(d)-(e).

21.    Plaintiff's Verified Complaint has pled "the sole exception to immunity from suit and liability of covered persons" and has placed this action under the exclusive Federal jurisdiction of U.S. District Court for the District of Columbia.  Various courts have already acknowledged this sole exception.

22.    This Court has original jurisdiction under 28 U.S.C § 1331 because this matter involves a Federal Question. As such, this entire action is removable under 28 U.S.C § 1441(c)(1). If this Court determines there are causes of action within Plaintiff's Verified Complaint that are not within this Court's original jurisdiction, the court ***must*** sever those claims and only remand the severed claims to state court. 28 U.S.C § 1441(c)(2). (Emphasis added).

23.    In this matter, Plaintiff has pled allegations consistent with the PREP Act's definition of willful misconduct and has incorporated those allegations into every count of her Verified Complaint. Exh. A ¶¶ 33, 78, 104, 108, 117, 125, 143. Therefore, this Court has original jurisdiction of Plaintiff's entire Verified Complaint. 28 U.S.C § 1441(c).

24.    However, and most notably, Plaintiff has included a count for "Gross Negligence". *See* Exh. A (Count V). By definition, "gross negligence" is based on a higher standard than negligence, which Plaintiff claims has resulted by Defendant's willful misconduct. As such, Plaintiff's Count V for "Gross Negligence" falls squarely within the PREP Act's definition for "willful misconduct." 42 U.S.C. § 247d-6d(c)(1)(B). Thus, at a minimum, this Court has original jurisdiction over Plaintiff's claim for Gross Negligence.

## IV.    FEDERAL QUESTION JURISDICTION UNDER 28 U.S.C. § 1331 EXISTS BASED ON THE PREP ACT

25.    This case is removable under 28 U.S.C. § 1441(a) on the basis of "original jurisdiction" because Plaintiff's Complaint asserts a claim "arising under" federal law within

the meaning of 28 U.S.C. § 1331.

26.  Plaintiff's Complaint alleges that due to the wrongful acts and omissions of Defendant, Arun Agarwal became infected with COVID-19 during his residency at Central Island and died due to the virus on April 5, 2020.  See Exh. A.

27.  Such allegations relate to Central Island's administration or use of qualified pandemic products used to diagnose, mitigate, prevent, treat or cure COVID-19, or to limit the harm COVID-19 might otherwise cause including NIOSH approved respiratory protective devices (facemasks) and other Personal Protective Equipment ("PPE").  Therefore, the claims fall under the PREP Act, the applicability of which presents a significant federal question relating to the ongoing national emergency and COVID-19 pandemic. As such, Congress provided an exclusive remedy for the substance of the allegations, and relief sought in the Complaint and federal law expressly pre-empts state law for purposes of federal question jurisdiction. See 42 U.S.C. §§ 247d-6d, 247d-6e.

28.  The PREP Act, along with the Declarations of United States Health and Human Services ("HHS") Secretary, are federal statutes that apply to healthcare providers and skilled nursing facilities, such as Central Island, with respect to the administration of countermeasures to diagnose, treat, prevent and mitigate the spread of COVID-19.

29.  As Plaintiff has alleged claims which are preempted under a federal statute, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Federal courts have "jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action *or* that the plaintiff's right to relief necessarily

depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Calif. v. Construction Laborers Vacation Trust for Southern Calif.*, 463 U.S. 1, 27-28 (1983); *Dennis v. Hart*, 724 F.3d 1249, 1253 (9th Cir. 2013); *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998).

30.    While a plaintiff is ordinarily entitled to choose a state or federal forum, "a plaintiff may not defeat federal subject-matter jurisdiction by omitting to plead necessary federal questions", i.e., "artful pleading." *Rivet v. Regions Bank of La.*, 522 U.S. 470,475. "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of plaintiffs complaint. The artful pleading doctrine allows removal where federal law completely preempts plaintiffs state-law claim." Id. "The artful pleading rule applies when Congress has either (1) so completely preempted, or entirely substituted, a federal law cause of action for a state one that plaintiff cannot avoid removal by declining to plead necessary federal questions, or (2) expressly provided for the removal of particular actions asserting state law claims in state court." *Romano v. Kazacos*, 609 F.3d 512, 519 (2d Cir. 2010) (internal citations and quotations omitted).

31.    Complete preemption exists when the preemptive force of federal law is so powerful that it displaces any state law cause of action, and leaves room only for a federal claim for purposes of the "well-pleaded complaint" rule. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987); see also *NASDAQ OMX Group, Inc. v. UBS Securities, LLC*, 770 F.3d 1010 (2d Cir. 2014).

### A.   The PREP Act Generally

32.    The PREP Act was enacted in December 2005, to encourage the development and deployment of covered countermeasures in response to public health emergencies. Congress

has provided that the HHS Secretary "shall lead all federal public health and medical response to public health emergencies." 42 U.S.C. § 300hh. The PREP Act gives the HHS Secretary authority to issue a declaration recommending administration of specified countermeasures and providing liability immunity to "covered persons" "against any claim of loss caused by or relating to the administration/use of such countermeasures and the management and operation of a covered countermeasures program." 42 U.S.C. § 247-6d(a)(1).

33.    In enacting the PREP Act, 42 U.S.C. §§ 247d-6d and 247d-6e (2006), Congress has provided preemption and immunity for the claims and relief sought in Plaintiff's Complaint. With the PREP Act, Congress sought to alleviate liability concerns associated with delivering countermeasures to the public by providing protections for healthcare providers involved in the planning, distribution and dispensing of such countermeasures.

34.    The liability immunity provided in the PREP Act ensures that healthcare providers and other care facilities are not subject to lawsuits which tax their time and energy, when such resources should be directed toward resident care.

35.    The PREP Act provides liability protections for pandemic and epidemic products and their administration. The legislation empowers the Secretary of HHS to issue a declaration providing immunity for "covered persons" to suits and liability under federal and state law with respect to claims relating to the administration of a "covered countermeasure" during a health emergency. 42 U.S.C. §§ 247d-6d(a)(1). The PREP Act at 42 U.S.C. § 247d-6d(a)(1) provides as follows:

> Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure.

36.    Federal jurisdiction requires that only one claim be identified as a federal question.  See 28 U.S.C. § 1367 [supplemental jurisdiction]; see also *Franchise Tax Board v. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983).

37.    Section (b) of the PREP Act provides that if the Secretary makes a determination that a disease or other health condition or other threat to health constitutes as public health emergency, the Secretary may make a declaration setting forth that subsection (a) is in effect with respect to the manufacture, testing, development, distribution, administration or use of one or more covered countermeasures under conditions as the Secretary may specify in the Declaration or an amendment thereto.  42 U.S.C. § 247d-6d(b)(1) and (4).

38.    The PREP Act further provides that, "[n]o court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection."  42 U.S.C. § 247d-6d(b)(7) (emphasis added).  Thus, under the PREP Act, Congress has not only provided immunity claims arising out of covered countermeasures, it has delegated regulatory authority to the HHS Secretary.

39.    As Congress has expressly delegated the duty to apply and interpret the Act to the Secretary, the Declarations of the HHS Secretary are entitled to *Chevron* deference.  Where Congress has expressly delegated interpretive authority to an agency, that agency's interpretative proclamations are controlling on the federal courts.  See *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-844 (1984).

40.    Further, it can "be apparent from the agency's generally conferred authority  and other statutory circumstances that Congress would expect the agency to be able to speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law", especially where the agency's reasoning is valid.  *United States v. Mead Corp.*, 533 U.S. 218,

228-229 (2001).  As such, "a reviewing court has no business rejecting an agency's exercise of its generally conferred authority to resolve a particular statutory ambiguity simply because the agency's chosen resolution seems unwise … but is obliged to accept the agency's position if Congress has not previously spoken to the point at issue and the agency's interpretation is reasonable…."  Id. at 229.  (Internal citations omitted); *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984) ("a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.")

41.    The Second Circuit in *Catskill Mountains Chapter of Trout Unlimited, Inc. Envtl. Prot. Agency*, 846 F.3d 492, 507 (2d Cir. 2017), emphasized the importance of judicial deference where agency action is sound and reasoned.  Therein, the court explained that under *Chevron*, the first question is: "'whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'"  *Id*. at 507, citing *Chevron*, 467 U.S. at 842–43.  If the statutory language is silent or ambiguous, however, courts proceed to the second step, where "'the question for the court is whether the agency's answer is based on a permissible construction of the statute'" at issue. *Id.*, citing *Chevron*, 467 U.S. at 843.  If the agency's interpretation is not "'arbitrary, capricious, or manifestly contrary to the statute,'" *Id.*, citing *Chevron*, 467 U.S. at 844, the court will accord deference to the agency's interpretation so long as it is supported by a reasoned explanation, and "so long as the construction is "'a reasonable policy choice for the agency to make.'"  *Id.*, citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 986 (2005).

42.    Here, HHS is charged with administering the PREP Act during a national public

health emergency. Its interpretation that the PREP Act is a complete preemption statute is based on the framework of the PREP Act, including the purpose and scope of the Act as applied to the COVID-19 pandemic and the Act's exclusive federal remedial scheme. This interpretation is sound and reasonable, especially since other complete preemption and original jurisdiction statutes have analogous remedial schemes that involve both administrative and judicial remedies.

**B. The Declaration of the HHS Secretary for the COVID-19 Pandemic and Advisory Opinions**

43.    On March 10, 2020, HHS Secretary Alex Azar issued a Declaration invoking the PREP Act for the COVID-19 pandemic. The Declaration was effective as of February 4, 2020. (See Exh. A to Defendant's Request for Judicial Notice "RFJN"). The Secretary subsequently issued an Amended Declaration under the PREP Act, which was effective as of March 27, 2020.   (See Exh. B to Defendant's RFJN).  The Amendment added respiratory protective devices approved by NIOSH (National Institute for Occupational Safety and Health) as a covered countermeasure under the PREP Act.  On June 4, 2020, the Secretary further amended the March 10, 2020 Declaration to clarify that covered countermeasures under the Declaration include qualified products that limit the harm COVID-19 might otherwise cause.  (See Exh. C to Defendant's RFJN).

44.    On December 3, 2020, the HHS Secretary issued a Fourth Amended Declaration under the PREP Act, and made this Amended Declaration effective as of February 4, 2020. (See Exhibit D to Defendant's RFJN).  The Secretary's Fourth Amended Declaration provides that "COVID-19 is an unprecedented global challenge that requires a whole-of-nation response that utilizes federal-, state-, and local-distribution channels as well as private-distribution channels.  Given the broad scale of this pandemic, the Secretary amends [Section VII of] the

Declaration to extend PREP Act coverage to additional private-distribution channels. . . ." *Id.*

45.    The Fourth Amended Declaration specifically provides that Section VII of the Declaration is amended to extend liability protection under the PREP Act to "covered persons" for Recommended Activities that are related to "covered countermeasures" that are:

> i.    Licensed, approved, cleared or authorized by the FDA (or that are permitted to be used under an Investigational New Drug Application or an Investigational Device Exemption) under the FD&C Act or PHS Act to treat, diagnose, cure, prevent, mitigate, or limit the harm from COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom; or

> ii.    A respiratory protective device approved by NIOSH under 42 CFR part 84, or any successor regulations, that the Secretary determines to be priority for use during a public health emergency declared under section 319 of the PHS Act to prevent, mitigate, or limit the harm from COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom.  *Id.*

46.    Secretary Azar's Fourth Amended Declaration further makes explicit that there can be situations where not administering a Covered Countermeasure to a particular individual can fall under the PREP Act. "Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections."  *Id.*

47.    The Fourth Amended Declaration further provides that "the Declaration must be construed in accordance with the Department of Health and Human Services (HHS) Office of the General Counsel (OGC) Advisory Opinions [of April 17, 2020 as modified on May 19, 2020 and October 22, 0220 as modified on October 23, 2020] on the Public Readiness and Emergency Preparedness Act and the Declaration ("Advisory Opinions").  The Declaration incorporates the Advisory Opinions for that Purpose."  *Id*. Thus, the Fourth Amended Declaration incorporates all OGC Advisory Opinions related to COVID-19 and the PREP Act into the Secretary's March 10, 2020 initiating Declaration.  Where Congress has expressly

delegated interpretive authority to an agency, that agency's interpretative proclamations are controlling on the federal courts. See *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-844 (1984). Thus, the OGC Advisory Opinions must be afforded Chevron controlling weight. Moreover, section (b)(7) of the PREP Act provides that "[n]o court of the United States, or of any state, shall have subject jurisdiction to review whether by mandamus or otherwise, any action by the Secretary under this subsection." 42 U.S.C. § 247d-6d(b)(7).

48.    Crucially, as discussed more completely below, Amendment Four directly acknowledges the federal interests in cases which require interpretation and application of the PREP Act:

> COVID-19 is a global challenge that requires a whole-of-nation response. There are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities. *Id*.

49.    Amendment Four further explains:

> The world is facing an unprecedented pandemic. To effectively respond, there must be a more consistent pathway for Covered Persons to manufacture, distribute, administer or use Covered Countermeasures across the nation and the world. Thus, there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having a uniform interpretation of the PREP Act. *Id*.

Thus, Amendment Four declares that the interpretation of the PREP Act is a matter of significant and substantial federal concern, and that removal of any case involving the interpretation of that Act is proper in accordance with the Supreme Court holding in *Grable*.

50.    On January 8, 2021, the HHS OGC issued new controlling authority in the form of Advisory Opinion 21-01, which unequivocally confirms that: (1) the PREP Act is a "Complete

Preemption" Statute which confers federal question removal jurisdiction under 28 U.S.C. § 1441(a); (2) the PREP Act is invoked by allegations like those in the Complaint, including alleged inaction or failure to act; and (3) as discussed in more detail below, federal jurisdiction is separately conferred in such cases under the doctrine articulated by the United States Supreme Court in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005), because "ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that the case belongs in federal court." (See Exh. E to Defendant's RFJN).

51.     Advisory Opinion 21-01 unequivocally states that "[t]he PREP Act is a 'Complete Preemption' Statute," because it establishes both a federal and administrative cause of action as the only viable claim, and vests exclusive jurisdiction in federal court. *Id.*

52.     Advisory Opinion 21-01 rejects the notion that immunity under the PREP Act requires actual "use" of a covered countermeasure. Specifically, it provides that, "this 'black and white' view clashes with the plain language of the PREP Act, which extends immunity to anything 'relating to' the administration of a covered countermeasure." *Id.*

53.     Advisory Opinion 21-01 further provides that "[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declarations liability protections. There can potentially be other situations where a conscious decision not to use a covered countermeasure could relate to the administration of the countermeasure." *Id.*

54.     Additionally, Advisory Opinion 21-01 explains that "program planners" fall within the umbrella of "covered persons" under the PREP Act and that "decision-making that leads to the non-use of covered countermeasures by certain individuals is the grist of program planning, and is

expressly covered by PREP Act." *Id*.

55.    Advisory Opinion 21-01 is binding on this court, as the HHS Secretary has now incorporated all HHS Advisory Opinions pertaining to COVID-19 into the PREP Act's implementing Declaration itself, and proclaimed that the Declaration "must" be construed in accordance with these opinions. *Id*.

56.    As confirmed in Advisory Opinion 21-01, when the PREP Act is triggered, complete preemption attaches. Indeed, "[t]he sine qua non of a statute that completely preempts is that it establishes either a federal cause of action, administrative or judicial, as the only viable claim or vests exclusive jurisdiction in a federal court. The PREP Act does both." *Id*. at 2. In the Fifth Amendment to the PREP Act Declaration of the HHS Secretary, published on February 2, 2021, the acting Secretary reiterates that "[t]he plain language of the Prep Act makes clear that there is complete preemption of state law…." (See Exh. F to Defendant's RFJN).

57.    Here, Plaintiff's claims are preempted by the PREP Act. Under the PREP Act, Congress has provided an exclusive remedy and exclusive federal jurisdiction for the substance of the allegations and relief sought in the Complaint thereby completely preempting State law with respect to the claims raised in the Complaint. Moreover, Central Island's administration of countermeasures, such as the use of facemasks and other PPE, and COVID-19 testing, to diagnose, treat, prevent or mitigate the spread of COVID-19, which forms the basis of this action, presents a federal question under the PREP Act giving this Court original jurisdiction preempting the state claims asserted by Plaintiff in the Complaint.

### C. Federal Question Jurisdiction is Proper as the PREP Act is a Complete Preemption Statute

58.    On its face, Plaintiff's claims appear to sound in state law. However, Congress has

already provided an exclusive remedy for Plaintiff's "claim for loss" under the PREP Act, in the form of a no-fault compensation program and an exclusive judicial cause of action for claims of "willful misconduct."

59.    Complete preemption is "a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of federal law to be so broad as to entirely replace any state-law claim." *Marin General Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009).  Complete preemption exists when the preemptive force of federal law is so powerful that it displaces any state law cause of action, and leaves room only for a federal claim for purposes of the "well-pleaded complaint" rule. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987).  The Ninth Circuit has acknowledged that removal based on the complete preemption doctrine is appropriate where Congress has created an exclusive federal cause of action.  See *In re Miles*, 430 F.3d 1083, 1088 (9th Cir. 2005).

60.   The issue of whether federal question jurisdiction exists when a plaintiff asserts a claim in state law was addressed by the Supreme Court in *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1 (2003).  The Court explained:

> [A]    state claim may be removed to federal court … when a federal statute wholly displaces the state-law cause of action through complete pre-emption. When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. In the two categories of cases where this Court has found complete pre-emption … the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.  *Id*. at 8 [Internal citations and footnotes omitted].

61. There, the plaintiff brought an action for usury under state law, which was preempted by the usury provisions of the National Bank Act (12 U.S.C.A. §§ 85 and 86).  The Court held that

even though Congress did not explicitly provide for removal of preempted claims, the provisions collectively "supersede[d] both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive." *Beneficial Nat. Bank*, supra, at 11. Therefore, the Court held that federal question jurisdiction was proper under the "complete preemption" doctrine.

62.    Since 2003, the doctrine of "complete preemption" has been applied by the lower courts to at least ten other statutes. Circuit and district courts considering the issue have found "complete preemption" where a federal statute (1) expressly preempts state law and (2) creates an exclusive federal remedy for preempted state claims. See, e.g., *In re WTC Disaster Site*, 414 F.3d 352, 380 (2d Cir. 2005); *Spear Marketing, Inc. v. Bancorp South Bank*, 791 F.3d 586 (5th Cir. 2015); *Nott v. Aetna U.S. Healthcare, Inc.*, 303 F.Supp.2d 565 (E.D. Pa. 2004).

63.    In *Gilbert Garcia et al v. Welltower OpCo Group LLC*, No. 8:20-cv-02250, 2021 WL 492581, *1, *6 (C.D. Cal. Feb. 10, 2021), Judge James V. Selna of the U.S. District Court for the Central District of California also ruled that the PREP Act is a complete preemption statute.

64.    The PREP Act plainly satisfies the criteria of a complete preemption statute as set forth by the Supreme Court in *Beneficial Nat. Bank*, 539 U.S. 1.  First, the PREP Act clearly preempts any state law that runs afoul of the immunity granted thereunder.  Under 42 U.S.C. § 247d-6d(a)(1), a "covered person" is afforded broad immunity "from suit and liability under Federal and State law" for "all claims for loss caused by, arising out of, relating to, or resulting from" the "administration" or "use" of a "covered countermeasure" if the Secretary of the HHS issues a declaration to that effect—which he has.  (Emphasis added.)  The PREP Act also expresses its clear intention to preempt state control of the issues raised, and explicitly provides as follows:

> During the effective period of a declaration under subsection (b), or at any time with respect to conduct undertaken in accordance with such declaration, no State or political subdivision

of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that—

(A)    is different from, or is in conflict with, any requirement applicable under this section; and

(B)    relates to the . . . distribution, sale, donation, purchase . . . or the prescribing, dispensing or administration by qualified persons of the covered countermeasure, or to any matter included in a requirement applicable to the covered countermeasure under this section or any other provision of this chapter. . .   42 U.S.C. § 247d-6d(b)(8).

65.    The PREP Act further establishes a set of exclusive federal remedies and cause of action for all claims relating to covered countermeasures, as well as the procedures applicable to such actions/claims. Under 42 U.S.C. § 247d-6d(d)(1), "the sole exception to the immunity from suit and liability of covered persons … shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct." For claims that do not assert "willful misconduct," the exclusive remedy for relief is established under §247d-6e, which permits an individual to claim no-fault benefits through the Covered Countermeasure Process Fund for a "covered injury directly caused by the administration or use of a covered countermeasure."  Simply put, state causes of action or claims relating to covered countermeasures are impermissible as a claimant must either file a claim through the established fund or a Complaint for Willful Misconduct under the PREP Act in the District Court for the District of Columbia.  Thus, the PREP Act substitutes an exclusive federal cause of action and claims process in place of all state claims relating to covered countermeasures.

66.    The PREP Act further sets forth the procedures for suit.  Pursuant to subsection (e)(1), titled "Exclusive Federal Jurisdiction," any action for Willful Misconduct must be filed in the U.S. District Court for the District of Columbia. Such claims are also subject to heightened pleading requirements (i.e., requirement that claims are to be plead pleading with particularity) and verification of and submission of a physician declaration in support of the complaint; and are

assigned to a three-judge panel which has jurisdiction to consider motions to dismiss and motions for summary judgment.  42 U.S.C. § 247d-6d(e)(1), (e)(3) (e)(4) and (e)(5).   Moreover, pursuant to Section 247d-6d(e)(10),

> The United States Court of Appeals for the District of Columbia Circuit shall have jurisdiction of an interlocutory appeal by a covered person taken within 30 days of an order denying a motion to dismiss or motion for summary judgment based on an assertion for the immunity from suit conferred by subsection (a) or based on an assertion of the exclusion under subsection (c)(5).  (Emphasis added.)

 Hence, the PREP Act sets up an exclusive cause of action for the claims asserted by Plaintiff and the procedures and remedies governing the cause of action.

67.    For claims for no-fault benefits through the Covered Countermeasure Process Fund, 42 U.S.C § 247d-6 sets forth the procedure for obtaining such no-fault benefits. Thus, the PREP Act clearly satisfies the Beneficial test for "complete preemption" analysis.

68.    OGC Advisory Opinion 21-01, issued on January 8, 2021, which is entitled to Chevron deference, also makes clear the PREP Act is a "complete preemption" statute.  The Advisory Opinion states that "[t]he sine qua non of a statute that completely preempts is that it establishes either a federal cause of action, administrative or judicial, as the only viable claim or vests exclusive jurisdiction in a federal court. The PREP Act does both."  (See Exh. E to Defendant's RFJN).  The PREP Act has also been determined to be a complete preemption statute by a state appellate court in New York. See *Parker v. St. Lawrence County Public Health Department*, 102 A.D.3d 140, 143-45 (N.Y. App.Div. 2012).

69.    A number of other statutes with analogous remedial structures have been held to establish complete preemption and original federal jurisdiction:

> Labor Management Relations Act ("LMRA"). The Supreme Court has adjudged the LMRA to be a complete preemption statute. Thereunder, any state law claims that are substantially dependent on analysis of a collective-bargaining agreement are preempted by Section 301 of the LMRA and must be brought in federal court.

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). However, before an employee may bring a Section 301 claim in court, the employee must "'at least attempt to exhaust exclusive grievance and arbitration procedures established by the [collective] bargaining agreement.'" *Campbell v. Kane, Kessler, P.C.*, 144 F. App'x 127, 130 (2d Cir. 2005) (quotation omitted).

*Employee Retirement Income Security Act* ("ERISA). ERISA, another complete preemption statute, also has a "firmly established federal policy favoring exhaustion of administrative remedies" for purposes of, inter alia, reducing the number of frivolous lawsuits, providing a non-adversarial method of claims settlement and minimizing the costs of claims settlement for all. *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir.1993); *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 445 (2d Cir. 2006).

*Air Transportation Safety and System Stability Act* ("ATSSSA"). The Second Circuit has also applied the doctrine of complete preemption to the ATSSSA, which is structurally similar to the PREP Act. Congress passed the ATSSSA after the September 11th terrorist attacks to create an exclusive federal cause of action for damages "arising out of the hijacking and subsequent crashes" of the aircraft used in the attacks. ATSSSA § 408(b)(1), 49 U.S.C. §40101. Like the PREP Act, the ATSSA also includes a victim's compensation fund, where a claim is filed with an appointed "Special Master," who reviews the claim to determine whether the claimant is an eligible individual under the Act. ATSSSA § 405, 49 U.S.C. §40101. Claims are limited under the fund and do not include punitive damages awards. Similar to the PREP Act, Congress' principal goals in enacting the ATSSSA "were to provide relief without litigation to individuals harmed as a result of the crashes and to limit the liability of entities that were likely to be sued for injuries suffered in connection with the crashes." *In re WTC Disaster Site*, 414 F.3d 352, 377 (2d Cir. 2005).

*Federal Tort Claims Act* ("FTCA"). The FTCA, which is strikingly similar to the PREP Act, immunizes certain persons from liability and also provides an administrative/judicial remedial

scheme for claims falling thereunder. The FTCA affords liability protection to federal employees for any negligent or wrongful acts committed while acting within the scope of their employment, and provides an exclusive federal cause of action in the federal district courts against the United States under specified circumstances. Like the PREP Act, before a judicial action may be instituted, the claimant must first present the claim before the appropriate federal agency for adjudication. 28 U.S.C. § 2675. This jurisdictional requirement cannot be waived, *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005), resulting in the dismissal of claims where a claimant fails to exhaust the administrative remedies. See, e.g., *Leytman v. United States*, No. 19-3929, 2020 WL 6297440, at *2 (2d Cir. Oct. 28, 2020) [affirming dismissal of pending and unexhausted claims under FTCA for lack of subject matter jurisdiction]. Indeed, the federal remedy under the FTCA, similar to the PREP Act, ensures that "decisions and conduct of federal public servants in the course of their work will not be adversely affected by fear of personal liability for money damages and of the burden of defending damage liability claims." *Melo v. Hafer*, 13 F.3d 736, 744 (3d Cir. 1994).

70.  Like the statutes discussed above, the PREP Act creates an exclusive federal remedy for claims falling thereunder, involving both an administrative and judicial component. 42 U.S.C. § 247d-6e; § 247d-6d(d)(e). This remedial structure was purposefully established by Congress to provide timely and uniform compensation in place of expensive and uncertain litigation, and is explicitly "exclusive of any other civil action or proceeding for any claim or suit [the PREP Act] encompasses …." 42 U.S.C. § 247d-6e(d).

71.  As set forth above, the Fifth Amendment to the PREP Act Declaration of the HHS Secretary reiterates that "[t]he plain language of the Prep Act makes clear that here is complete preemption of state law…."  (See Exh. F to Defendant's RFJN).  The PREP Act meets the

requirements for removal jurisdiction as set forth by the U.S. Supreme Court in Beneficial National Bank v. Anderson, supra, and any claim falling within its broad preemptive ambit is subject to removal under the doctrine of "complete preemption."

### D. The PREP Act Applies Because Central Island is a Covered Person

72.    Immunity under the PREP Act is afforded to "covered persons" which include a person or entity that is a "program planner" of a covered countermeasure, and/or a qualified person who prescribed, administered, or dispensed such countermeasure.  Under the Act, "person" includes "an individual, partnership, corporation, association, entity, or public or private corporation."  42 U.S.C. § 247d-6d (i)(2) and (5).  The term "program planner" includes persons/entities "who supervised or administered a program with respect to the administration, dispensing, . . . provision, or use of a . . . qualified pandemic product or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a [HHS Secretary's] declaration . . . ."   42 U.S.C. § 247d-6d (i)(6).

73.    A private sector employer or other person can be a "program planner" when it carries out prescribed activities.  (See 85 Fed. Re. 15198, 15199).  The OGC has also issued a letter which provides that a "senior living community" meets the definition of a "program planner" to the extent that it supervises or administers a program with respect to the administration, dispensing, distribution, provision or use of a qualified pandemic or epidemic product, including the provision to a facility to administer or use a covered countermeasure.  (See Exh. G to Defendant's RFJN). The broad definition of "program planner" was also addressed in Advisory Opinion 20-04, issued October 22, 2020, by the OGC.  (See Exh. H to Defendant's RFJN).

74.    Defendant, Central Island, qualifies as a "covered person" under the PREP Act.  At the

time of the allegation set forth in the Complaint, Central Island was acting as a "program planner" and "qualified person." Central Island is a skilled nursing facility licensed by the State of New York, which employs licensed nursing personnel, including Registered Nurses and Licensed Practical Nurses, who are authorized to prescribe, administer, or dispense the covered countermeasures set forth in Plaintiffs' Complaint. Additionally, Central Island is a program planner that was supervising and administering an infection control program involving the administration, dispensing, provision and use of qualified pandemic and epidemic products.

### E. The PREP Act Applies to the Allegations in the Complaint

75.  The PREP Act is applicable with respect to a "covered countermeasure," which definition includes: (1) a qualified pandemic or epidemic product (as defined in § 247d-6d (i)(7)) . . . or (4) a respiratory protective device that is approved by the National Institute for Occupational Safety and Health ("NIOSH") and that the Health and Human Service Secretary determines to be a priority for use during a public health emergency declared under section 247d. 42 U.S.C. § 247d-6d (i)(1).

76.  A "qualified pandemic or epidemic product" is defined as: a drug, biologic product or device that is:

> (A)(i) a product manufactured, used, designed, developed, modified, licensed, or procured—
> (I) to diagnose, mitigate, prevent, treat, or cure a pandemic or epidemic; or II) to limit the harm such pandemic or epidemic might otherwise cause; (II) to limit the harm such pandemic or epidemic might otherwise cause; (ii)    a   product, manufacture, used, designed, developed, modified, licensed, or procured to diagnose, mitigate, prevent, treat, or cure a serious of life-threatening disease or condition caused by a product described in clause (i); or (iii)     a   product or technology intended to enhance the use or effect of a drug, biologic product, or device described in clause (i) or (ii); and (B)(i) approved or cleared under chapter V of the Federal Food, Drug, and Cosmetic Act or licensed under section 262 of this title; (ii)   the object of research for possible use as described in subparagraph (A) and is the subject of an exemption under section 505(i) or 520(g) of the Federal Food, Drug, and Cosmetic Act; or (iii) authorized for emergency use in accordance

with section 564, 564A, or 564B of the Federal Food, Drug and Cosmetic Act. 42 U.S.C. § 247d-6d (i)(7).

77.    The OGC issued an omnibus Advisory Opinion on May 19, 2020 to address questions regarding the scope of the PREP Act immunity for the COVID-19 pandemic.  The Opinion summarized the requirements to meet the definition of a qualified pandemic or epidemic product noting that the product:

    (1)      must be used for COVID-19; and
    (2)      must be
            (a) approved, licensed, or cleared by FDA;
            (b) authorized under an EUA [emergency use authorization];
            (c) described in an EUI [emergency use instructions]; or
            (d) used under either an Investigational new Drug (IND) application or an
            Investigational Device Exemption.  (See Exh. I to Defendant's RFJN).

78.    Moreover, attached as Appendix A to this Advisory Opinion is a list of the "covered countermeasures" for which emergency use authorizations have been issued by the United States Food and Drug Administration.  (See Exh. I to Defendant's RFJN).  The list includes COVID-19 test kits, and provides that face shields, gowns, shoe covers, non-surgical isolation gowns, surgical caps, properly labeled non-surgical masks, and certain non-NIOSH approved respirators are covered by an EUA.  While surgical masks and surgical gowns are not listed, such items are Class II medical devices which are cleared by the FDA for use.  See 21 C.F.R. § 878.4040.  Thus, COVID-19 testing kits, face masks, gowns, gloves and other PPE are "qualified pandemic or epidemic products" and "covered countermeasures" under the PREP Act, as such products are either FDA cleared/approved or are included in an EUA.

79.    Immunity under the PREP Act "applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the . . .  distribution . . . purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure."  42 U.S.C. § 247d-6d (a)(2)(B)

(emphasis added).

80.  Plaintiff alleges that Central Island "failed to maintain an infection prevention and control program . . . to prevent the development and transmission of COVID-19." Such a claim, by its nature, arises out of Central Island's use, distribution, procurement and administration of covered countermeasures/qualified pandemic products (including COVID-19 testing, NIOSH approved respiratory protective devices and other PPE) used to diagnose, mitigate, prevent, treat or cure the COVID-19 virus, or to limit the harm COVID-19 might otherwise cause thereby triggering application of the PREP Act. Plaintiff cannot allege decedent's death was due to improperly implementing effective infection control policies to prevent COVID-19 without implicating the countermeasures that comprise those policies and which are covered under the PREP Act, such as PPE and COVID-19 testing, since such measures are the main line of defense against and the centerpiece of any infection control program used to prevent and treat the spread of the virus that causes COVID-19.  Exh. A, Generally.

81.  In his initial March 10, 2020 Declaration, the HHS Secretary notes that the "PREP Act does not explicitly define the term 'administration' but does assign the Secretary the responsibility to provide relevant conditions in the Declaration." (See Exh. C to Defendant's RFJN).  In Section IX of the Declaration, the Secretary defines "administration of a covered countermeasure" as the "physical provision of the countermeasures to recipients or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients; management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures."

82.  Under the PREP Act, the Secretary may specify that liability protections are in effect only for Covered Countermeasures obtained through a particular means of distribution.  Section VII of

the Secretary's initial March 10, 2020 Declaration provides that:

> [L]iability immunity is afforded to Covered Persons only for Recommended Activities that are related to (a)  Present or future federal contracts, cooperative agreements, grants, other transactions, interagency agreements, memoranda of understanding, or other federal agreements; or (b) Activities authorized in accordance with public health and medical response of the Authority Having Jurisdiction to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures following a Declaration of an emergency.  (See Exh. C to Defendant's RFJN).

83.   Moreover, the Secretary's Fourth Amended Declaration at Section VII, states as follows:

> COVID-19 is an unprecedented global challenge that requires a whole-of-nation response that utilizes federal-, state-, and local-distribution channels as well as private-distribution channels.  Given the broad scale of this pandemic, the Secretary amends [Section VII of] the Declaration to extend PREP Act coverage to additional private-distribution channels….  (See Exh. D to Defendant's RFJN).

84.   The Fourth Amended Declaration specifically provides that Section VII of the Declaration is amended to extend liability protection under the PREP Act to Covered Persons for Recommended Activities that are related to "covered countermeasures" that are:

> i.  Licensed, approved, cleared or authorized by the FDA (or that are permitted to be used under an Investigational New Drug Application or an Investigational Device Exemption) under the FD&C Act or PHS Act to treat, diagnose, cure, prevent, mitigate, or limit the harm from COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom; or   ii. A respiratory protective device approved by NIOSH under 42 CFR part 84, or any successor regulations, that the Secretary determines to be priority for use during a public health emergency declared under section 319 of the PHS Act to prevent, mitigate, or limit the harm from COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom.  (See Exh. D to Defendant's RFJN).

85.   The broad definition of "administration of a covered countermeasure" set forth in the HHS Secretary's Declaration encompasses Central Island's plans and decisions with respect to how best to utilize and optimize supplies of PPE and other covered countermeasures, and whether and when the use of such countermeasures is appropriate.  [Note:  At the time of Central Island's COVID-19 outbreak in March 2020 no testing kits were available to the facility and PPE supplies

were subject to a national shortage]. Moreover, during the relevant time frame to Plaintiff's claims, Central Island was subject to guidance/directives issued by the Centers for Disease Control and Prevention ("CDC"), Centers for Medicaid and Medicare Services ("CMS"), and the New York Department of Public Health. Central Island was following this applicable public health guidance with respect to the use of covered countermeasures including PPE. Central Island has thus established that it has immunity from suit and liability under the PREP Act as it relates to Plaintiff's claims.

86. Moreover, "[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections." (85 Red. Reg. 79190, 79194, and 79197). For example, the PREP Act would be triggered in cases where a plaintiff alleges a failure to use PPE, if the failure was the outcome of some form of decision-making process. (See Exh. E to Defendant's RFJN). In the January 8, 2021 AO, the OGC further states that "[p]rogram planning inherently involves the allocation of resources and when those resources are scarce, some individuals are going to be denied access to them. Therefore, decision-making that leads to the non-use of covered countermeasures by certain individuals is the grist of program planning, and is expressly covered by the PREP Act." (See Exh. E. to Defendant's RFJN).

87. Further, as established above, Central Island was a "program planner" since it supervised or administered a program with respect to the administration, dispensing, distribution, provision or use of a qualified pandemic or epidemic products, which included decisions pertaining to the allocation and administration of covered countermeasures such as PPE, testing, etc., including how best to optimize supplies and when use is appropriate. Defendant's actions with respect to the coordination and implementation of its infection control program thus, inherently involve the

prioritization and purposeful allocation of covered countermeasures, including COVID-19 testing and PPE.

88.    This case does not involve nonfeasance or total inaction but instead relates to propriety of the measures implemented by Defendant, including those pertaining to covered countermeasures such as PPE and COVID-19 testing.  Defendant has thus established that PREP Act applies to Plaintiff's claims.

## V.    THIS CASE RAISES SUBSTANTIAL AND IMPORTANT FEDERAL ISSUES THUS PROVIDING EMBEDDED FEDERAL QUESTION JURISDICTION OVER PLAINTIFF'S CLAIMS

89.    Federal jurisdiction is further appropriate as this state action "arises under" federal law and raises a substantial federal issue.  See *Grable & Sons Metal Products v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005).  The applicability of the PREP Act poses a substantial federal issue which would serve to clarify and determine vital issues of federal law.  Federal question jurisdiction over state law claims may be sustained if the claims present a substantial, embedded question of federal law.  *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986).  In *Grable & Sons Metal Products v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005), the United States Supreme Court held that removal is appropriate if (1) the state law claim necessarily raises a disputed and substantial issue; and (2) a federal court may entertain the claims without disturbing federal/state comity principles.  Id. at 314.

90.    In his Fourth Amended Declaration, HHS Secretary Azar makes explicit that the PREP Act presents substantial federal legal and policy issues, and that there are substantial federal legal and policy interests within the meaning of Grable, in having a unified whole-of-nation response to the COVID-19 pandemic among federal, state, local and private-sector entities.  The Secretary attests that,

[t]he world is facing an unprecedented global pandemic.  To effectively respond, there must be a more consistent pathway for Covered Persons to manufacture, distribute, administer or use Covered Countermeasures across the nation and the world.  Thus, there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products v. Darue Engineering & Mfg*, 545 U.S. 308 (2005), in having a uniform interpretation of the PREP Act.  Under the PREP Act, the sole exception to the immunity for suit and liability of covered persons is an exclusive Federal cause of action against a Covered Person for death or serious physical injury proximately caused by willful misconduct of such Covered Person.  In all other cases, an injured party's exclusive remedy is an administrative remedy under section 319F-4 of the PHS Act.  Through the PREP Act, Congress delegated to me the authority to strike the appropriate Federal-state balance with respect to particular Covered Countermeasures through PREP Act declarations.  (See Exh. D to Defendant's RFJN).

91.    Thus, by the express terms of the Secretary's Fourth Amended Declaration, removal is proper under Grable because Plaintiff's state law claims raise a substantial issue of federal law involving the interpretation and application of the PREP Act. Secretary Azar's Fourth Amended Declaration directly addresses the federal interest in cases such as this, by stating not once, but twice: "there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005)."  (See Exh. D to Defendant's RFJN).  Here, Plaintiff alleges that Defendant failed to prevent the decedent, Arun Agarwal, from contracting COVID-19.  Such a claim, by its nature, arises out of Central Island's administration of covered countermeasures and invokes the PREP Act.  Thus, the federal legal and policy issues described in the Fourth Amended Declaration of the HHS Secretary control and require this Court to retain this action.

92.    The application of the PREP Act raises a substantial federal issue which is disputed.  The allegations in the Complaint arise out of Defendant's response to the COVID-19 pandemic and are inextricably intertwined with and invoke the PREP Act and the Declarations of the HHS Secretary. This Federal Court has a substantial interest in determining the application of the PREP Act in this

matter.  The PREP Act and its triggering immunity has been invoked in exceptionally rare circumstances since it was enacted in 2005.  The PREP Act and HHS Secretary Azar's declarations confer a broad and sweeping immunity to individuals and entities fighting the COVID-19 pandemic during this declared state of emergency.  The unique character of the COVID-19 virus, as well as its high communicability, required the HHS Secretary to set forth an expansive declaration covering broad categories of measures to fight the pandemic including COVID-19 testing and PPE, all of which require interpretation as to the scope and application.  Thus, there can be no doubt that there is a substantial and compelling interest for the PREP Act and the Secretary's Declaration to be interpreted by the federal courts.  Moreover, the federal courts are uniquely and properly positioned to interpret Congressional intent and interests of the federal government.

93.    This case also satisfies the second prong set forth in *Grable*.  Federal jurisdiction over Plaintiff's claims will not disturb federal-state comity principles under *Grable*.  As set forth by Secretary Azar in his Fourth Amended Declaration: "Through the PREP Act, Congress delegated to me the authority to strike the appropriate Federal-state balance with respect to particular Covered Countermeasures through PREP Act declaration." (See Exh. D to Defendant's RFJN). Moreover, the plain, statutory language of the PREP Act expresses a strong federal interest and a clear intention to which has not been seen by this Country in over a century.  The healthcare response to this pandemic was coordinated at a national level by HHS, the CDC, the FDA and CMS, and entailed the issuance of detailed directives to healthcare providers to identify and sequester infected patients, which patients under investigation were to be tested, and the use of personal protective equipment ("PPE").    Plaintiff's Complaint raises issues with respect to Defendant's response to a national pandemic and the response to the pandemic coordinated at a

federal level; as well as the procurement, use, allocation, distribution and administration supersede or preempt state control of the issues raised by Plaintiff's Complaint.

94.    Congress did not intend the application of PREP Act immunity to be decided by State Courts.  As such, this Court would not be disturbing or infringing on any balance of State and Federal judicial responsibilities by retaining jurisdiction.  To the contrary, the plain language of the statute seeks to assert broad federal authority over the issues arising under the Act, and seeks to eliminate all semblance of State Court control.  Secretary Azar's Fourth Amended Declaration makes explicitly clear that there is exclusive federal jurisdiction over lawsuits involving covered countermeasures, and that this federal jurisdiction is essential to the uniform provision of a national response to the COVID-19 pandemic and the PREP Act.   (See Exh. D to Defendant's RFJN).

## VI.    REMOVAL IS PROPER BECAUSE THIS COURT HAS JURISDICTION UNDER THE FEDERAL OFFICER STATUTE

95.    Removal is proper under 28 U.S.C. §1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer. Removal is appropriate under §1442(a)(1), when the removing defendant establishes that:

> (a)    Defendant is a "person";
> (b)    Defendant was acting under the direction of a federal officer when it engaged in the allegedly tortious conduct;
> (c) There is a causal nexus between the plaintiff's claims and the defendant's actions under federal direction; and
>
> (d) Defendant has raised a colorable defense based upon federal law.

*Goncalves v. Rady Children's Hospital San Diego* 865 F.3d 1237, 1244 (9th Cir. 2017).  Courts have a duty to broadly interpret Section 1442 in favor of removal, which "should not be frustrated by a narrow, grudging interpretation" of the statute.  *Ibid.* (quotations and citations omitted).

96.  This statute creates removal jurisdiction even as to cases that otherwise could not be commenced in or removed to federal court.  See *Jefferson County, Ala. v. Acker*, 527 U.S. 423,

431 (1999) (finding no diversity in a common law negligence action against government driver who lived in same state as plaintiff); see also *Mir v. Fosburg* 646 F.2d 342, 344 (9th Cir. 1980). Moreover, unlike the usual rule that removability in federal question cases must appear on the face of a well-pleaded complaint, cases may be removable under Section 1442(a) when a federal officer or agency raises a "colorable federal defense". See *Jefferson County, Ala. v. Acker*, supra, 527 U.S. at 431.

97.    Here, Defendant is a member of the nation's critical infrastructure and satisfies all elements for removal under Section 1442(a)(1). Defendant is a  "person" for the purpose of the federal officer statute.  The term "person" includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."  1 U.S.C. § 1; see also *Goncalves*, supra, 865 F.3d at 1244.

98.   As part of the nation's critical infrastructure, Defendant was also acting under the direction of a federal officer when it engaged in the alleged tortious conduct. The U.S. Supreme Court has held that the phrase "acting under" involves "an effort to assist, or help carry out, the duties or tasks of the federal superior."  *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007); see also *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Association of Philadelphia*, 790 F.3d 457 (3d Cir. 2015).  The "acting under" requirement is broad and is to be liberally construed.  *Watson*, supra, 551 U.S. at 147.

99.   "[R]emoval by a 'person acting under' a federal officer must be predicated upon a showing that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations.  *Cf. Bakalis v. Crossland Savings Bank*, 781 F.Supp. 140, 144-145 (E.D.N.Y. 1991) (finding 'The rule that appears to emerge from the case law is one of 'regulation plus...'); *Ryan v. Dow Chemical Co.*, 781 F. Supp.

934, 947 (E.D.N.Y. 1992) (finding that the "control requirement can be satisfied by strong government intervention and the threat that a defendant will be sued in state court 'based upon actions taken pursuant to federal direction.'"); see *Fung v. Abex, Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992).  The "acting under" requirement is met when the defendant is acting pursuant to detailed and ongoing instructions from a federal officer.  *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d. 387 (5th Cir. 1998).

100.    Defendant meets the "acting under" prong for removal based on the federal officer statute.  Here, Plaintiff contends that the acts and omissions of Defendant, with respect to its response to the COVID-19 pandemic, caused decedent, Arun Agarwal, to contract the virus which led to his death.  Specifically, Plaintiff alleges that Defendant failed to prevent the decedent from contracting COVID-19.  Exh. A, Generally.

101.    As examples of directives the Defendant was acting under prior to and at the time of Arun Agarwal's death:

A.   In January and February, 2020, the CDC issued a number of health updates regarding the 2019 Coronavirus, as well as criteria to guide the evaluation and testing of patients under investigation ("PUI") for COVID-19.  Healthcare providers were advised to identify PUI based on clinical features (i.e., fever or signs/symptoms of upper respiratory illness), travel to an affected geographic region and contact with a laboratory confirmed COVID-19 patient.  Persons meeting the PUI criteria were to be tested and healthcare providers were advised to immediately notify their local or state health department in the event they were evaluating a PUI.  State health departments in turn were instructed to immediately contact the CDC and complete a PUI case investigation form.  Initially COVID-19 testing was conducted solely through the CDC, which assisted local/state health departments in the collection, storage and shipment of specimens to the

CDC.  During this time, the CDC also directed healthcare providers to use standard, contact and airborne precautions when interacting with PUI.  (See Exh. J to Defendant's RFJN).

B. On February 1, 2020, the CDC issued an "Update and Interim Guidance on the Outbreak of 2019 Novel Coronavirus" to provide further guidance to healthcare providers regarding 2019-nCoV 2019 (the 2019 Novel Coronavirus, now known as COVID-19).  The guidance was part of the "ongoing US public health response . . . to identify and contain [the] outbreak and prevent sustained spread of 2019-nCoV in the United States" and addressed infection prevention and control specific to 2019-nCoV.  (See Exh. K to Defendant's RFJN).  In the update, the CDC noted that the first United States case was identified on January 21, 2020, and had recently traveled from Wuhan, China.  Since that time, six additional cases had been confirmed in the U.S., four among persons who had traveled from Wuhan and one a close contact of a confirmed case. This document further provided updated directives related to screening of patients in healthcare facilities, and coordination with local health departments for testing and reporting of results.  In the update, the CDC set forth the criteria for assessing patients for COVID-19, and advised that patients who meet the criteria should be asked to wear a surgical mask as soon as they are identified and evaluated in a private room with the door closed, ideally an airborne infection isolation room if available.  Healthcare personnel entering the room were again directed to use standard precautions, contact precautions, airborne precautions and eye protection.  Persons with a confirmed or suspected COVID-19 infection who were hospitalized were to be evaluated and cared for in a private room with the door closed, ideally an airborne infection isolation room (See February 1, 2020 CDC Health Update and Interim Guidance on the Outbreak of 2019 Novel Coronavirus (2019-n-coV), a true and correct copy of which is attached to Defendant's See Exh. K to Defendant's RFJN).

C. On February 6, 2020, CMS took direct action to prepare healthcare facilities for the national

response to the emerging 2019 Novel Coronavirus by issuing a Memorandum to State Survey Agency Directors.  The memo directed healthcare providers to adhere to CDC directives regarding the use of standard, contact and airborne precautions when interacting with PUI and advised facilities to have PPE measures and protocols in place.   (See Exh. L to Defendant's RFJN).

D.  On February 28, 2020, the CDC issued a Health Update and Interim Guidance on the Outbreak of 2019 Novel Coronavirus (COVID-19) for healthcare providers.  The Update noted that to date there had been limited spread in the United States.  As of February 26, 2020, there were a total of 61 cases in the country, 46 of whom were repatriated persons from high-risk settings.  The guidance again included criteria to guide the evaluation and testing of patients under investigation ("PUI") for COVID-19.  Healthcare providers were advised to identify PUI based on clinical features (i.e., fever or signs/symptoms of lower respiratory illness), travel to an affected geographic region and contact with a laboratory confirmed COVID-19 patient.  Persons meeting the PUI criteria were to be tested.   This update further added patients with fever and signs/symptoms of lower respiratory illness without an alternative explanatory diagnosis and no identified source of exposure to the list of those who should be tested.  At this time, testing was being performed at state public health laboratories and the CDC.  (See Exh. M to Defendant's RFJN).

E. On or about March 3, 2020, the CDC issued "Strategies to Prevent the Spread of COVID-19 in Long-Term Care Facilities (LTCF)".  This publication, issued specifically to long term care facilities such as Central Island, reiterated that standard, contact and droplet precautions with eye protection were to be used in the care of residents with an undiagnosed respiratory infection. Facilities were instructed to make PPE, including facemasks, eye protection, gowns and gloves available immediately outside the resident's room and to post signs on the door or wall outside the

room of the residence to clearly describe the type of precautions needed and the required PPE. (See Exh. N to Defendant's RFJN)

102.    This case involves a full-blown national health emergency and efforts made by the federal government in targeting the nation's healthcare industry—in particular, nursing facilities that are part of the nation's critical infrastructure—to help carry out this important goal, which is distinct from the typical regulator/regulated relationship described in *Watson*. *Cf. Watson*, 551 U.S. 142, 157. Nursing facilities are part of the critical national healthcare infrastructure and were among the first responders to the national COVID-19 pandemic. They manned the front lines of the pandemic during its most critical phases and where the danger to the public and to themselves was most acute. Significant and direct oversight by the federal government was critical in the effort to combat this infectious disease outbreak. Defendant was enlisted to assist the federal government, and hence, "acted under" a federal officer or agency in fighting the COVID-19 scourge, which has been ravaging the nation and the world.

103.    In summary, through the federal directives issued by the CDC, CMS, and the NYDPH surveyors contracted by CMS, federal authorities were making the operational decisions as it related to the clinical pandemic response in skilled nursing facilities. Facilities were ordered to restrict visitation, cancel communal dining, implement active screening and staff for fever and respiratory symptoms, screen staff at the beginning of their shift for fever and respiratory symptoms and actively take their temperature and document the absence of shortness of breath and any new or change in cough and sore throat. Facilities were instructed on which patients and staff to test for COVID-19, under what circumstances to use and how to conserve PPE, when to permit staff who had COVID-19 to return to work, and how to handle the isolation of residents infected with COVID-19 and those under investigation for COVID-19.

WHEREFORE, Defendant, Central Island, having established that this case is properly removed to Federal Court, provide notice pursuant to 28 U.S.C. § 1446, that the action pending in the Supreme Court of the State of New York County of Nassau to the U.S. District Court for the District of Columbia.  Defendant respectfully requests that this Court exercise jurisdiction over this case.

Date: March 4, 2022                          Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**

*/s/ Jodi V. Terranova*
Jodi V. Terranova, Esq. (Bar No. 472225)
1500 K Street, NW, Suite 330
Washington, D.C.  20005
Tel. (202) 626-7660
Fax (202) 628-3606
Jodi.Terranova@wilsonelser.com
*Counsel for Defendant CENTRAL ISLAND
HEALTHCARE*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of March, 2022, I electronically filed the foregoing Defendant's Notice of Removal with the Clerk of Court using the CM/ECF system, and served a copy by email and first-class mail to:

Joseph Ciaccio, Esq.
Napoli Shkolnik PLLC
400 Broadhollow Rd.; Ste. 305
Melville, NY 11747
T: 212.397.1000
Email: jciaccio@napolilaw.com
*Counsel for Plaintiffs*

*/s/ Jodi V. Terranova*
Jodi V. Terranova, Esq.